UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-23606-WILLIAMS/REID

JULIAN BUONOMO,

    Plaintiff,

v.

JETBLUE AIRWAYS CORPORATION,

    Defendant.

_____/

**ORDER ON DEFENDANT'S *DAUBERT* MOTION TO STRIKE
PLAINTIFF'S EXPERT, KATHLEEN LORD-JONES**

This cause is before the Court on Defendant JetBlue Airways Corporation's ("Defendant" or "JetBlue") *Daubert*[1] Motion to Strike Plaintiff's Expert Kathleen Lord-Jones ("Lord-Jones") (the "Motion"). [ECF. No. 49]. This matter was referred to the undersigned pursuant to an Order of Referral by the Honorable Kathleen M. Williams. [ECF. No. 5]. The Court has reviewed the Motion, the Response [ECF. No. 60] and the Reply [ECF. No. 65], as well as all the documents submitted in support of the parties' filings, the pertinent portions of the record, and all relevant authorities. For the reasons addressed below, it is **ORDERED** that the Motion be **DENIED**.

**BACKGROUND**

This is an action for damages under Article 17 and Article 21 of the Montreal Convention for an incident that took place on February 11, 2022 aboard a JetBlue international flight from Orlando, Florida to Montego Bay, Jamaica. [*See generally* ECF No. 8-2]. Plaintiff was seriously injured after hot water was spilled on his right arm and flank. [*Id.* at 3]. He alleges the incident

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1

resulted in first and second-degree burns, scarring, and other permanent injuries. [*Id.*]. Defendant's Motion seeks to exclude the following three opinions of Plaintiff's expert Lord-Jones:

1. Flight Attendant Cruz failed to properly secure and lock the lid in the CLOSED position on the hot beverage server while it was placed on the beverage cart positioned next to Mr. Buonomo's seat. Alternatively, she failed to place the lid on the server at all. This action was not reasonable in light of industry-wide safety practices and created a dangerous condition and compromised the health and safety of Mr. Buonomo.

2. JetBlue failed to adopt, implement, and train its flight attendants on Best Practices and Adopted Industry Standards regarding the placement of unsecured items on top of a beverage cart during a turbulence event. This failure created a dangerous condition that deviated from the standard of care and jeopardized Mr. Buonomo's personal safety.

3. Flight Attendant Cruz failed to follow her First Aid safety procedures regarding burn treatment in flight and provided ice to Mr. Buonomo to apply on his burns after the hot water spilled on top of him. This failure deviated from the standard of care and compromised Mr. Buonomo's health, wellbeing, and care.

ECF No. 49 at 1–2.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 594–95). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d

1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id*.

As to qualifications, an expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id.* So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id.*

Next, in determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262. These criteria apply to both scientific opinions and experience-based testimony. *Frazier*, 387 F.3d at 1261–62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

Finally, on the issue of helpfulness, expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre*, 308 F. App'x. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## DISCUSSION

The Court will first address Lord-Jones's general qualifications and then discuss the reliability and helpfulness of the three proffered opinions.

### I. GENERAL QUALIFICATIONS OF LORD-JONES

Plaintiff defines its expert's qualifications as "impeccable." [ECF No. 60 at 2]. After obtaining her college degree from the University of Colorado, Lord-Jones was trained by American Airlines as a flight attendant and worked for the company for 24 years. [*Id.* at 3; ECF No. 49-1 at 2]. She also worked for the Association of Professional Flight Attendants as the National Safety Coordinator for 10 years and provided recommendations to the National

4

Transportation Safety Board and the Federal Aviation Administration related to formal accident investigations. [ECF No. 60 at 3]. The Undersigned agrees with Plaintiff that Lord-Jones is sufficiently qualified to provide the three challenged opinions, which consist of an analysis of the carafe at issue, flight attendant training policies, and in-flight first aid safety procedures. The qualifications prong is not a stringent standard, "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Lebron v. Royal Caribbean Cruises, Ltd.*, 16-24687-CIV, 2018 WL 3583002, at *8 (S.D. Fla. July 26, 2018) (quoting *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009).

## II. FIRST OPINION: FLIGHT ATTENDANT NEIDA CRUZ FAILED TO PROPERLY SECURE AND LOCK THE LID OF THE BEVERAGE SERVER

Defendant takes issue with the demonstration conducted by Lord-Jones, which involved dropping a hot beverage server to simulate the accident that occurred on February 11, 2022. [ECF No. 60 at 9]. In its Response, Plaintiff explains that Lord Jones took several factors into account when conducting her demonstration, including the height of an average beverage cart, the height of the beverage server, and the approximate effect of the turbulence per Flight Attendant Neida Cruz's testimony. [*Id.*]. Lord-Jones's demonstration involved dropping the beverage server three times in the on/off position and three times in the closed position. [*Id.*]. She found that the lid came off when dropped in the on/off position and stayed put when dropped in the closed position. [*Id.*].

As an initial matter, the Court has already concluded that Lord-Jones is sufficiently qualified to conduct the demonstration, as explained in Section I. She need not be experienced in product defect testing, as Defendant alludes to, to provide an opinion regarding the effects of different levels of turbulence on the hot beverage server. [ECF No. 49 at 3]. Her experience in the industry, as well as providing expertise to the National Transportation Safety Board and the

Federal Aviation Administration, suffices. [ECF No. 49-1 at 2]. Her experience need not "precisely match the matter at hand." *Easterwood*, 2020 WL 6880369, at *2.

JetBlue then challenges Lord-Jones's methodology. It describes the experiment as one "that looks like it was designed as part of a fourth grade science project." [ECF No. 49 at 6]. It further argues that she has no technical or scientific background in the area, that it would be impossible to retest or recreate her experiment, and that there is no way to assess the potential error rate of the experiment. [*Id.*]. JetBlue complains that she "did no recording, took loose and imprecise measurements, and wholly failed to recreate the accident as similar as possible given that she haphazardly tossed the carafe around her lawn." [ECF No. 65 at 2].

Conversely, Plaintiff argues that Lord-Jones's opinion is reliable, as it is based on "an abundance of evidence in this case that [she] reviewed, cites in her expert report, and relied upon in forming this opinion." [ECF No. 60 at 6]. Plaintiff states that she reviewed the exemplar carafe, the photos of the carafe, and the care and handling instructions describing the different positions that the carafe top can be in. [*Id.*]. Indeed, Lord Jones worked with similar hot beverage servers as a flight attendant. [*Id.* at 8]. Her demonstration, Plaintiff argues, confirms what the evidence and her experience already established: "that the top of the carafe would have stayed on when it fell from the beverage cart if its top had been properly secured." [*Id.*].

The Court agrees that Lord-Jones's methodology is reliable. This is not a case where the "experiment strayed too far from the real-world conditions" and "cannot be said to fit the facts of this case." *Varner v. Dometic Corp.*, 2022 WL 2307002, *4 (S.D. Fla. Mar. 25, 2022). In fact, the experiment does not involve "hard science." It involves an "expert[] offering non-scientific, experience-based testimony." *Quevedo v. Iberia, Lineas Aereas De Espana, S.A. Operadora Unipersonal*, 17-21168-CV, 2018 WL 4932097, at *3 (S.D. Fla. Oct. 11, 2018). Here, the Court

6

considers whether her "preparation is of a kind that others in the field would recognize as acceptable." *Kumho Tire Co.*, 526 U.S. at 151. As has been established, Lord-Jones possesses learned practical experience. In fact, Defendant's expert agrees with Lord-Jones in certain respects. [ECF No. 60 at 7]. In her report, Lord-Jones states that the "results are consistent with my experience and training with hot beverage servers that I had used in the past and is also consistent with the manufacture's literature and the testimony of JetBlue Corporate Representative Melendez that if used properly, the server will not open and the contents within it will remain inside." [ECF No. 49-1 at 7]. In any case, "objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Archer Western - De Moya Joint Venture v. Ace American Insurance Co.*, Case no. 1:22-CV-21160, 2023 WL 8767434, at *5 (S.D. Fla. Dec. 19, 2023) (quoting *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011)).

As this Circuit has explained, "sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. That is the case here. Indeed, the testimony goes far beyond what an "average lay person" may offer and would certainly aid the trier of fact. *Webb*, 321 F.R.D. at 425.

**III.  SECOND OPINION: JETBLUE'S FAILURE TO ADOPT, IMPLEMENT, AND TRAIN ITS FLIGHT ATTENDANTS ON BEST PRACTICES AND ADOPTED INDUSTRY STANDARDS**

JetBlue contends that the second opinion is likewise unreliable. [ECF No. 49 at 7]. It cites to *Farley v. Oceania Cruises, Inc.*, 2015 WL 1131015 (S.D. Fla. Mar. 12, 2015), where the expert's testimony was stricken for failing to meet the reliability prong of *Daubert*. JetBlue takes issue with Lord-Jones's statement regarding best practices of the International Transport Association, stating that Cruz complied with JetBlue's policy, which did not require anything to be placed on the floor.

[ECF No. 49 at 8]. But, as Plaintiff points out, the expert's observation is *not* that Flight Attendant Cruz failed to comply with the company's policies and procedures. Instead, her opinion is that JetBlue itself did not have the proper policies in place. [ECF No. 60 at 11]. Indeed, her recommendations are based on industry best practices. [*Id.* at 12]. This testimony would certainly be helpful to the fact finder in determining industry policies regarding the placement of unsecured items on top of beverage carts during turbulence and is "beyond the understanding of the average lay person." *Webb*, 321 F.R.D. at 425.

Further, *Farley* is distinguishable. The expert there did not inspect the vessel where the accident at issue occurred, did not cite to any publications or experiments to support his opinions, and did not provide a detailed explanation of how his experience supported his opinions. 2015 WL 1131015 at *8. Here, the expert cited to both the International Transport Association guidelines regarding catering and equipment checks at different levels of turbulence as well as JetBlue's own Flight Attendant Manual. [ECF No. 49-1 at 7–8]. Lord-Jones then applied these guidelines to the statements made by Flight Attendant Cruz, concluding that, based on her "knowledge, training, and experience, the safest practice is to remove the items, especially the items containing hot liquids, from the top of the cart when an aircraft experiences turbulence." [*Id.* at 9]. She goes on to state that "[b]y moving these items to a safer location and placing them either inside the cart, if possible, or onto the aircraft floor, the chances of these items spilling onto and/or striking a passenger is either eliminated or decreased." [*Id.*]. Failure to take these steps created a "dangerous condition" for Buonomo. [*Id.*]. Lord-Jones's opinions are *not* based on, as Defendant argues, "trust-me-I'm-a-flight-attendant methodology." [ECF No. 65 at 3].

IV. **THIRD OPINION: FLIGHT ATTENDANT CRUZ FAILED TO FOLLOW CERTAIN SAFETY PROTOCOLS**

Finally, JetBlue argues that its opinion regarding the use of ice on the burns is "totally unnecessary and unhelpful for an expert witness." [ECF No. 49 at 9]. The Undersigned disagrees. Lord-Jones's testimony—based on her experience as a flight attendant for over two decades—certainly sheds light on Flight Attendant Cruz's alleged failure to rely on her training or consult her in-flight manual, which states that flight attendants should *not* use ice when treating certain burns. [ECF No. 60 at 14]. Further, the opinion itself does not need to be "scientific." [ECF No. 49 at 9]. As the court in *Daubert* and Rule 702 state, the application of scientific, technical, *or* specialized expertise can be used to aid the trier of fact to understand the evidence and determine a fact issue. *Daubert*, 509 U.S. at 589; Fed. R. Civ. P. 702(a) (emphasis added). The evidence does, however, need to be reliable. Thus, "[f]or nonscientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (quoting *Kumho Tire Co.*, 526 U.S. at 152). "A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" *Id.* Here, Lord-Jones concludes that the flight attendants were not properly trained on JetBlue's Flight Attendant Manual based on their actions following Plaintiff's burn. [ECF No. 49-1 at 10]. She considers the accident together with the relevant section of the manual that discusses varying severities of burns and first aid actions that should follow. [*Id.*]. The testimony would thus be helpful and meets the *Daubert* reliability prong.

## CONCLUSION

Based on the foregoing, the Court orders that Defendant JetBlue Airways Corporation's *Daubert* Motion to Strike the Testimony of Kathleen Lord-Jones [ECF. No. 49] be **DENIED.**

**SIGNED** this 22nd day of December, 2023.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Kathleen M. Williams**; and

**All Counsel of Record**