UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-23606-WILLIAMS/REID

JULIAN BUONOMO,

    Plaintiff,

v.

JETBLUE AIRWAYS CORPORATION,

    Defendant.
_____/

**ORDER ON PLAINTIFF'S *DAUBERT* MOTION TO STRIKE
DEFENDANT'S EXPERT, NICHOLAS NAMIAS, M.D.**

This cause is before the Court on Plaintiff's *Daubert*[1] Motion to Strike Defendant's Expert Nicholas Namias, M.D. ("Dr. Namias") (the "Motion"). [ECF. No. 50]. This matter was referred to the undersigned pursuant to an Order of Referral by the Honorable Kathleen M. Williams. [ECF. No. 5]. The Court has reviewed the Motion, Defendant JetBlue Airways Corporation's ("Defendant" or "JetBlue") Response [ECF. No. 63] and the Reply [ECF. No. 64], as well as all the documents submitted in support of the parties' filings, the pertinent portions of the record, and all relevant authorities. For the reasons addressed below, it is **ORDERED** that the Motion be **DENIED**.

**BACKGROUND**

This is an action for damages under Article 17 and Article 21 of the Montreal Convention for an incident that took place on February 11, 2022 aboard a JetBlue international flight from Orlando, Florida to Montego Bay, Jamaica. [*See generally* ECF No. 8-2]. Plaintiff was seriously

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1

injured after hot water was spilled on his right arm and flank. [*Id.* at 3]. He alleges the incident resulted in first and second-degree burns, scarring, and other permanent injuries. [*Id.*]. Defendant's expert witness Dr. Namias has rendered an opinion on whether the care provided to Plaintiff after the incident, including JetBlue initially providing Plaintiff with ice to cool the burn, was reasonable and appropriate. Plaintiff's Motion seeks to exclude Dr. Namias' opinion on three grounds: (1) his testimony is not based on sufficient facts or data; (2) he does not utilize a reliable methodology and fails to apply methods reliably to the facts of the case; and (3) his opinion would have a prejudicial effect on the jury, citing to Federal Rule of Evidence 403. [*See generally* ECF No. 50].

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 594–95). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id*.

As to qualifications, an expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id.* So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id.*

Next, in determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. These criteria apply to both scientific opinions and experience-based testimony. *Frazier*, 387 F.3d at 1261–62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

Finally, on the issue of helpfulness, expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre*, 308 F. App'x. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## DISCUSSION

Dr. Namias opines that the medical care rendered to Plaintiff was reasonable and appropriate, including initially providing Plaintiff with ice to cool the burn. [ECF No. 63 at 2]. Based on his review of the medical records and photographs of Buonomo, concerns surrounding the cooling of burns "are only for large burns where cooling could induce hypothermia." [ECF No. 50-1 at 2]. Thus, he concludes that cooling served to slow the burning process, without risk of harm. [*Id.*] He further concluded that Plaintiff's wounds had "progressed to healing as expected[,]" and opined on possible future medical care. [*Id.*].

The Court will consider Dr. Namias' opinion in conjunction with the "qualifications," reliability," and "helpfulness" prongs of *Daubert*. *See Frazier*, 387 F.3d at 1260.

### I. DR. NAMIAS' QUALIFICATIONS

As an initial matter, Defendant highlights its expert's qualifications and experience treating burn patients as follows:

4

> Dr. Namias is Professor and Chief, Division of Trauma and Acute Care Surgery at University of Miami Miller School of Medicine. [DE 50-1, Namias Report p. 1]. Dr. Namias testified his training and experience includes "four years of medical school, five years of surgical residency, two years of trauma and critical care fellowship, and then practicing burns for, I don't know, let's see, '96 to 2016, at least 20 years." [DE 50-2, Namias Depo. p. 27].

[ECF No. 63 at 2].

Plaintiff appears to question the qualifications of Dr. Namias only to the extent that he has no experience treating burn patients with ice and has never applied ice to burns in non-medical situations. [ECF No. 64 at 3]. In its Reply, Plaintiff cites to excerpts from Dr. Namias' deposition in which he states that "there is no point in [applying ice to burns] once [the patient] arrives at the hospital, the burning is done, but if you have a small burn and can get immediate cooling to stop the burn, anecdotally that would be helpful." [*Id.* at 64]. Plaintiff defeats his own argument by providing testimony of Dr. Namias affirming that there is "no point" in applying ice when the patient arrives at the hospital. [*Id.*]. Indeed, he states that "there would be no planned treatment of repetitive applications of ice every several hours over a course of days." [ECF No. 50-2 at 9]. It follows that a doctor would generally *not* have experience applying ice to burn victims at the hospital because "the burning is done." [*Id.* at 12]. Suffice it to say that the Dr. Namias is more than "minimally qualified" to opine on the appropriate care needed to treat burns, having 20 years of experience in this field. *Lebron v. Royal Caribbean Cruises, Ltd.*, 16-24687-CIV, 2018 WL 3583002, at *8 (S.D. Fla. July 26, 2018) (quoting *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009). Objections to his level of his expertise will not go to admissibility, but instead to credibility and weight. [*Id.*].

**II.     THE RELIABILITY OF THE TESTIMONY**

The crux of Plaintiff's argument centers on the reliability of Dr. Namias' testimony. Plaintiff challenges his opinion for the failure to cite to treatises or other supporting materials and

his lack of knowledge with regard to the care JetBlue provided to Plaintiff. [ECF No. 50 at 3–4]. Buonomo argues that the expert "provided no methodology for how he arrived at his conclusion that the care JetBlue provided to Plaintiff was appropriate" and thus amounts to speculation. [*Id.* at 4]. Indeed, "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702, advisory committee's notes to 2000 amendment).

Here, while Dr. Namias' report does not specifically explain his methodology, his experience in treating burn patients, along with the deposition testimony, leads to a reasonable inference that his "methodology was the application of that knowledge to the case documents he reviewed." *Scott v. Paychex Ins. Agency, Inc.*, 22-62052-CIV, 2023 WL 5275182, at *7 (S.D. Fla. Aug. 16, 2023) (noting that the lack of detail on the expert's methodology was overcome by an analysis of the expert's experience and training). *See also Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1330 (11th Cir. 2014) (stating that a physician's "application of . . . extensive, relevant experience contributed to the reliability of [the expert's] methodology."). Dr. Namias is an "experienced-based expert medical professional" with twenty years of practice treating burn patients. [ECF No. 63 at 2, 6]. And while Buonomo argues that Dr. Namias failed to evaluate the facts or data before providing his opinion, that is simply not the case. [ECF Nos. 50 at 3–4; 64 at 6]. He reviewed the medical records and photographs of Plaintiff's injuries, discussed in detail the lingering effects of the burn—including Plaintiff's cramping and sensitivity—and applied his medical knowledge to the facts presented to him. [ECF Nos. 50-1 at 2; 50-2 at 7].[2]

---

[2] Despite the expert's report citing burns resulting from "hot coffee" as opposed to hot water (as is referenced in the parties briefing), the Court does not find this to be a determinative issue, as

Further, Plaintiff takes issue with the fact that Dr. Namias did not rely on studies in his report and the books mentioned in his deposition relate to burns generally, not to treatments of burns with ice. [ECF No. 64 at 5–6]. Dr. Namias testified that there are not many textbooks on burns, listing one authoritative textbook on burns and another on trauma which discusses burns. [ECF No. 63 at 3]. But Plaintiff cites to no authoritative texts regarding this precise area of study—*treating burns with ice*—to support its argument. Indeed, Dr. Namias supports this point by stating that "[t]here's going to be no big randomized control trial of treating a burn with ice." [*Id.* at 6]. His report further states that "[c]oncerns in the burn literature over cooling burns are only for large burns.. . ." [ECF No. 50-1 at 2]. Thus, Plaintiff's argument fails. In any case, there is no "inherent requirement" that a medical expert reference independent studies that support his conclusion. *Greene v. Bd. of Regents of Univ. Sys. of Georgia*, 4:21-CV-277, 2023 WL 5837501, at *12 (S.D. Ga. Sept. 8, 2023). "[W]hen the opinions clearly demonstrate something about the expert's methodology, . . . the court can draw inferences about the methodology from the opinions." *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005). "*Daubert* is not a mechanism for grading expert reports[.]" *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 378 (N.D. Fla. 2017) (alteration added; citation and quotation marks omitted).

Next, Plaintiff argues that Dr. Namias' report and deposition transcript is devoid of "any explanation for why his experience as a doctor led to his conclusion or why it is a sufficient basis for his opinion." [ECF No. 64 at 4]. Plaintiff harps on the expert's statement that he came to his conclusion "anecdotally[,]" citing a string of case law that finds anecdotal experiences unreliable. [*Id.*]. The statement at issue made by the expert is: "[I]f you have a small burn and can get

---

neither party distinguish the two liquids or otherwise identified this error in their filings or at the expert's deposition.

immediate cooling to stop the burn, *anecdotally* that would be helpful." [ECF No. 50-2 at 12 (emphasis added)].

Plaintiff conflates the case law with the facts at hand. The two cited cases found the expert opinion unreliable because the opinions relied *entirely or almost entirely* on anecdotal experiences. *See McBride v. Carnival Corp.*, Case No. 1:16-CV-24894-JLK, 2019 WL 3338169, at *3 (S.D. Fla. July 25, 2019) (finding methodology unreliable because it was "*almost entirely* based on anecdotal experience or speculation"); *DW by and through CW v. Carnival Corp.*, No. 17-20115-CIV-WILLIAMS, 2018 WL 7822329, at *4 (S.D. Fla. June 19, 2018) ("Testimony is unreliable where the expert's opinions are based *entirely* on anecdotal experience and observations.. . .") (emphasis added). Upon a review of the report and deposition transcript, it is clear that Dr. Namias' ultimate conclusion was not drawn entirely, nor almost entirely, from anecdotal experience. His extensive experience with burn victims provides a base from which he could reasonably opine on the initial use of ice to cool Plaintiff's burn.

With regard to the expert's reliability, the Court notes that the Dr. Namias was not necessarily required to examine the Plaintiff himself. As here, the court in *Rafferty v. Erhard*, No. 09–CV–1019, 2012 WL 2577473, at *7 (W.D.N.Y. July 3, 2012) and later in *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1217 (S.D. Fla. 2016) found as much:

> In *Rafferty*, the medical expert "did not examine the plaintiff, but instead issued a report based upon his review of the various medical records and tests relating to the plaintiffs['] injuries." [2012 WL 2577473, at *7] (alteration added). The court determined the medical expert's testimony was admissible because he was a qualified physician, with years of experience, and his opinion was based on reviewing medical records, which was acceptable under *Daubert. See id.* at *7.
>
> Similarly, here, Stashak's testimony is admissible because it is based on his twenty-six years of experience as an orthopedic surgeon and his review of Plaintiff's medical records. (*See generally* Stashak Dep.); *see also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809–10 (3d Cir.1997) ("[T]he district court erred in ruling [the medical] expert['s] testimony on causation was inadmissible" even though the

expert did not examine or speak to the plaintiff and relied solely on the plaintiff's medical records. (alterations added))

*Geyer*, 203 F. Supp. 3d at 1217.

### III. THE HELPFULNESS OF THE TESTIMONY

Plaintiff only briefly challenges the helpfulness of the expert's testimony in its Reply. [ECF No. 64 at 7]. The Undersigned will nonetheless address the "helpfulness" of his testimony in accordance with this Circuit's case law. *Webb*, 321 F.R.D. 420 at 425 (quoting *Frazier*, 387 F.3d at 1262–63).

According to Rule 702(a) of the Federal Rules of Evidence, an expert's opinion must assist the trier in making a factual determination in order to be admissible. "Expert testimony which does not relate to any issue in the case is not relevant and ergo, not helpful." *Daubert*, 509 U.S. at 591 (citing Weinstein & Berger ¶ 702[2], at 702–18). "In order for the expert's testimony to be helpful it must lie outside the realm of the lay jurors' common knowledge." *Frey v. Accessory Brands, Inc.*, 11-60486-CIV, 2012 WL 13005551, at *3 (S.D. Fla. June 1, 2012) (citing *PharmaStem Theraputics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1349 (Fed. Cir. 2007)).

In its Reply, Plaintiff states that "Dr. Namias' purported opinion is unsubstantiated and unspecific[,] rendering it unhelpful to the trier of fact." [ECF No. 64 at 7 (quotation marks omitted)]. However, Dr. Namias' opinion will, at a minimum, assist the jury in evaluating the flight attendant's treatment of the burn and the scarring that resulted. Treatment of burns is certainly "outside the realm of the lay jurors' common knowledge." *Frey*, 2012 WL 13005551, at *3.

### IV. POTENTIAL FOR PREJUDICIAL EFFECT ON THE JURY

Buonomo believes that the "incompleteness" of the expert's analysis "threatens to mislead the jury and prejudice Plaintiff." [ECF No. 50 at 5]. It argues that Dr. Namias' analysis "lacks any reliable foundation and is not based on the facts of this case." [ECF No. 64 at 8]. Defendant states

9

that this argument is "boilerplate" and is a "repackaging of Plaintiff's arguments against [the expert's] methodology . . . ." [ECF No. 63 at 8].

A district court may exclude relevant evidence under Rule 403 if "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see Daubert*, 509 U.S. at 595. Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013) (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

Buonomo failed to establish how the probative value of Dr. Namias' analysis is substantially outweighed by danger of unfair prejudice or confusion of the issues. The Court has already established that the expert is experienced, reliable, and based his analysis on the facts of this case. Rule 403's "extraordinary remedy" does not apply here. *Patrick*, 513 F. App'x at 886.

## CONCLUSION

Based on the foregoing, the Court orders that Plaintiff Julian Buonomo's *Daubert* Motion to Strike the Testimony of Nicholas Namias, M.D. [ECF. No. 50] be **DENIED.**

**SIGNED** this 22nd day of December, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **U.S. District Judge Kathleen M. Williams**; and
      **All Counsel of Record**